

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

January 24, 1958

Honorable Price Daniel
Governor of Texas
Capitol Station
Austin, Texas

Opinion No. WW-349

Re: Validity of proposed
contract between the
State Building Commis-
sion and the Texas State
Historical Survey
Committee and questions
relative to certain
appropriations to the
State Building Commis-
sion from which the
consideration of the

Dear Governor Daniel:       contract is to be paid.

You have submitted for our consideration a proposed
contract between the State Building Commission and the Texas
State Historical Survey Committee which contract, omitting
the formal parts, reads as follows:

"This CONTRACT is made and entered into, in
quadruplicate originals, on the _____ day of _____
_____, 1958, by and between the State Building
Commission and the Texas Historical Survey Commit-
tee, pursuant to the authority provided in Senate
Bill No. 134, Acts of the 54th Legislature, 1955,
Regular Session, Chapter 514, (codified in Vernon's
Civil Statutes as Article 678m), Senate Bill 426
of the 55th Legislature (Regular Session) and
House Bill 62 of the 55th Legislature (Regular
Session).

"The Texas State Historical Survey Committee
agrees to perform the following services for the
State Building Commission for a period of _____
years, beginning _____, 1958 and ending on
_____, 195__.

"(1) Locate the graves of the Heroes of the
Texas War for Independence and prepare recommenda-
tions for properly marking them.

"(2)   Work with the State Building Commission, as the Commission directs, in planning for the Vicksburg monument to Texas Confederates, in the proper designation of the new Supreme Court Building as a Confederate Memorial and in the restoration of the Old Land Office Building.

"(3)   As needed in connection with (1) and (2) above determine the names of Texas Heroes of the Confederate States of America and the Texas War for Independence and substantiate their inclusion in this category.

"(4)   Provide consultant service and advice as to the plans of the State Archives and Library Building.

"(5)   Determine the condition of memorials and monuments erected by the Commission of Control for Texas Centennial Celebrations and make recommendations for their repair and relocation where necessary continuing to encourage local restoration and preservation of these markers and sites.

"(6)   Perform any other services necessary to carry out the historical provisions of Senate Bill No. 134, Acts of the 54th Legislature, 1955, Regular Session, Chapter 514, (codified in Vernon's Civil Statutes as Article 678m), Senate Bill 426 of the 55th Legislature (Regular Session) and House Bill 62 of the 55th Legislature (Regular Session).

"The State Building Commission agrees to pay the Texas State Historical Survey Committee the sum of _____ per month for a period of _____ (___) years, beginning on the ____ day of _____, 1958.   Such payments shall be paid monthly by warrants drawn by the Comptroller of Public Accounts of the State of Texas upon the State Treasurer out of funds appropriated to the State Building Commission for such purpose by the Legislature of the State of Texas.

"The Texas State Historical Survey Committee agrees to submit to the State Building Commission monthly statements, in triplicate, accompanied by

an affidavit that the contracted services have been performed and that the monthly payment is due. The first payment provided herein shall be paid on _____, 1958, and subsequent payments shall be made on the first day of each month thereafter for the term of this contract, or not exceeding thirty days after the due date.

"The State Building Commission shall have the right to cancel and terminate this contract by giving written notice to the Texas State Historical Survey Committee at least thirty (30) days prior to the cancellation date stated in the notice of cancellation."

The questions you submitted for our consideration we quote from your letter of January 16, 1958:

"Will you please inform me whether or not this contract may legally be executed, assuming of course, that the funds involved do not exceed those appropriated to the Building Commission.

"If you find that this contract may be executed, may the funds be paid from Item 4, 7, 8, 9, or 10 of the appropriation to the Building Commission in H.B. 133, 55th Legislature."

We have examined carefully the statutes of the State of Texas relative to the authority of the two agencies to enter into this contract, and we find authority for this contract in Article 678m, Vernon's Civil Statutes; S.B. 426, Acts 55th Leg., Regular Session, 1957, Ch. 500, p. 1460, codified in Vernon's Annotated Civil Statutes as Article 6145a; and H.B. 62, Acts of the 55th Leg., Regular Session, 1957; Ch. 274, p. 615, codified in Vernon's Annotated Civil Statutes as Article 678m-2. It is our opinion that the duties which are to be performed by the Texas State Historical Survey Committee constitute a part of the duties of the State Building Commission which may legally be delegated to the Texas State Historical Survey Committee by contract.

However, we have some question as to the authority of the State Building Commission to agree to pay to the Texas State Historical Survey Committee a definite sum per month for a period of years without a requirement in the contract

that all of said amount be expended for the services set out in the contract, or in the alternative, that payment for the services be made on the basis of the actual or estimated cost to the Texas State Historical Survey Committee. The contract as submitted to us does not require the performance of services commensurate with the amount of money to be paid. As far as the provisions of this contract are concerned, the Texas State Historical Survey Committee could perform services costing it $100 a month, and yet receive payment in the amount of $500 per month from the State Building Commission. It is our opinion that when one state agency contracts with another state agency for the performance of services, the money to be transferred or paid in exchange for such services should be paid on the basis of an approximation of the actual costs of such services. The Legislature in enacting the Inter-Agency Cooperation Act, Article 4413(32), V.C.S., adopted this requirement for all inter-agency contracts under that act. In Section 3 of the above Article, it is provided:

> " . . . The actual cost of rendering the services or the nearest estimate of the cost that is practicable shall be reimbursed . . . "

This Act further provides that there must be a written agreement between the two agencies specifying:

> " . . . the bases for calculating reimbursable costs, and the maximum amount of the costs during the time period covered by the agreement."

We think these requirements are sound and should be applied to all contracts between state agencies. Accordingly, we are of the opinion that this contract in its second and third paragraphs from the end, should be reformed so as to follow the requirements of the Inter-Agency Cooperation Act even though other authority for the contract exists in Article 678m, V.C.S. With the exception of the change indicated with regard to costs, we think the contract to be valid.

Considering now which of the line-item appropriations to the Texas Building Commission mentioned by you in your letter may be used to make the payments required under the above contract, it is our opinion that line-items 9 and 10 by their designations are unrelated to any service to be performed under the proposed contract, and are, therefore,

unavailable for payment of any of the sums due under such
contract. Line-item 4 is restricted to use for salaries or
professional services. As such, we think this appropriation
may be used for payment for each of the services to be
rendered under the contract, since such services are in
effect professional services and are accomplished by payment
of salaries to professional people.

Line-item 7 is restricted to the repair and
relocation of existing historical markers. It is our opinion
that the appropriation under this line-item may be used for
the payment of services to be rendered under numbered para-
graph (5) of the contract, and under paragraph (1) of the
contract to the extent the services to be rendered under the
latter paragraph concern existing markers. It is our further
opinion that the appropriation under line-item 8 may be used
only in the completion of the Supreme Court Building as the
first building to be erected by the Building Commission under
the terms of Section 10 of Article 678m, V.C.S. As such,
this appropriation may be used only for payment for services
rendered under numbered paragraph (2) "in the proper designa-
tion of the new Supreme Court Building as a Confederate
Memorial", and under numbered paragraph (3) only insofar as
the services described in that paragraph pertain to the
designation of the new Supreme Court Building as a Confederate
Memorial.

We cannot tell what appropriations may be used for
the services to be performed under numbered paragraph (6) in
the contract because of the generality of this paragraph.
The services performed under this Section must be applied to
the authorizations for expenditures made by the Appropriation
Act, and payment made from the proper line-item as described
above.

## SUMMARY

The proposed submitted contract is valid
with the exception of the second and
third paragraphs from the end, which
such paragraphs should be rewritten to
provide for payment on a basis approxi-
mating actual cost, rather than on a
specific sum basis. Line-items 4, 7
and 8, Texas Building Commission Appro-
priation, H.B. 133, Acts 55th Leg.,

Honorable Price Daniel, Page 6 (WW-349).

Regular Session, 1957, Ch. 385, p. 870,
may be used for the specific services
stated, but line-items 9 and 10 are
unrelated to any duty to be performed
under the contract and are not avail-
able for payment of the contract.

Yours very truly,

WILL WILSON
Attorney General of Texas

By John H. Minton, Jr.
John H. Minton, Jr.
Assistant

JHM:wam:jl

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

John Reeves

J. C. Davis, Jr.

Leonard Passmore

REVIEWED FOR THE ATTORNEY GENERAL
BY:
    W. V. Geppert